**In re VIRGINIA ELECTRIC AND POWER COMPANY, Petitioners.**

**VIRGINIA ELECTRIC AND POWER COMPANY, Appellant,**

**v.**

**SUN SHIPBUILDING AND DRY DOCK COMPANY, Appellee,**

**v.**

**STONE AND WEBSTER ENGINEERING COMPANY, Appellee.**

Nos. 76–1070, 76–1168.

United States Court of Appeals, Fourth Circuit.

Argued April 8, 1976.

Decided May 24, 1976.

Douglas W. Davis, Richmond, Va. (R. Kenneth Wheeler, Robert F. Brooks, Thomas G. Slater, Jr., Sandy T. Tucker, John C. Thomas, Hunton, Williams, Gay & Gibson, Richmond, Va., on brief), for petitioners.

John J. Runzer, Philadelphia, Pa., Charles W. Laughlin, Richmond, Va. (Pepper, Hamilton & Scheetz, Philadelphia, Pa., Christian, Barton, Epps, Brent & Chappell, Richmond, Va., Laurence V. Senn, Mudge, Rose, Guthrie & Alexander, New York City, John S. Battle, Jr., Rosewell Page, III, Joseph L. S. St. Amant, Neil S. Kessler, Richmond, Va., McGuire, Woods & Battle, Charlottesville, Va., on brief), for respondents.

Before BOREMAN, Senior Circuit Judge, CRAVEN, Circuit Judge and HADEN, District Judge.*

CRAVEN, Circuit Judge:

Reluctantly and against his previously stated better judgment, the district judge recused himself from further participation in the trial of this action by VEPCO against

* Sitting by Designation.

defendant Sun Shipbuilding and Dry Dock Company. In the course of doing so, he also disqualified all other federal judges residing in Virginia. We are satisfied that the trial judge's decision was based upon a clearly erroneous finding of fact and a misapprehension of applicable legal principles. Accordingly, we hold that all Virginia judges are qualified to sit, and we vacate the order of recusal and remand with instructions that the district judge consider anew the propriety of his sitting in the case, guided by this court's interpretation of the appropriate legal standards.

## I.

The underlying litigation involves VEPCO's attempt to recover from Sun Ship damages allegedly resulting from defendant's fabrication of pump supports for VEPCO's North Anna nuclear power station in Mineral, Virginia. VEPCO filed suit on November 8, 1974, claiming damages of $152 million. The case has become exceedingly complex, involving voluminous pleadings, third-party complaints and counterclaims, discovery depositions and 195,000 documents. During the year the trial court presided over this case, 24 orders on various motions were entered.

The trial judge is a customer of VEPCO, the plaintiff, and therein lies the problem. Under a fuel adjustment clause, VEPCO's customers have been directly surcharged an amount which VEPCO now claims as an element of its damages. Should VEPCO be successful, the utility might possibly be required to return to its customers that part of the award representing increased fossil fuel costs.

An audit of the district judge's utility bills by a professional accounting firm revealed that *if* VEPCO wins the lawsuit, and

*if* it is awarded the entire amount claimed, and *if* the defendants satisfy the judgment, and *if* the Virginia State Corporation Commission decides that VEPCO must return to its customers that part of the award representing increased fuel costs, and when VEPCO makes such an adjustment, then the trial judge, as a customer of VEPCO, would get a refund estimated at between $70 and $100.[1]

The trial judge first perceived this situation to be a problem *sua sponte* in a letter to counsel dated May 21, 1975, some six and one-half months after the litigation began. The judge suggested that his status as a VEPCO customer and his "interest" in the hypothetical $100 refund might require his disqualification from the case. The judge did not offer to recuse himself, but instead merely called the matter "to the attention of counsel so they may take such action, if any, as they deem to be in the best interests of their respective clients."[2]

Sun Ship waited almost four months to act.[3] After the judge's letter but before Sun Ship's motion, the trial court entered ten orders, including a lengthy and comprehensive discovery memorandum. Finally, on September 9, 1975, Sun Ship filed the following Motion for Disqualification:

Comes now the defendant and third-party plaintiff, Sun Shipbuilding and Dry Dock Company, by counsel, and *moves that* The Honorable D. Dortch *Warriner*, United States District Judge, *disqualify himself* from acting in this matter, *on grounds of interest, and that no judge who is a customer,* directly or indirectly, *of the plaintiff, Virginia Electric and Power Company, be appointed in his place.*

(Emphasis added.) There was not, and has never been, the slightest hint or suggestion

---

1. The refund would not necessarily be paid in a lump sum. It might be paid over a period as long as 40 years.

2. Judge's letter of May 21, 1975, Joint Appendix at 52.

3. In the November 24, 1975, bench opinion, Judge Warriner noted "that Sun Ship presented

a proper question for determination by the court, that it presented it in a proper, though I must remark, somewhat untimely manner . . . ." Joint Appendix at 83. In oral argument, Sun Ship contends that the computation of the judge's hypothetical interest by auditors was difficult and time consuming.

that the trial judge bore any personal bias or prejudice against Sun Ship, that he had any direct or personal economic interest in VEPCO or any of the parties, or that he would be incapable of hearing the case impartially and without favor. The motion attacks only the judge's *status* as a customer of VEPCO. If it takes him out of the case, it also takes out all other Virginia judges.[4]

The motion was argued before the court on November 24, 1975. The district judge delivered an oral opinion from the bench denying the motion and finding himself capable of "complete impartiality."[5] The judge did find, however, that the amount of the refund, speculative and remote though it might be, could not be considered *de minimis*. As a result, the judge was sensitive to any appearance of impropriety should he decide to stay on the case. The court concluded:

> Since this Court is secure in the knowledge that there is no evil and since the Court has wrestled with the question of whether there is an appearance of evil— and that has been the question that the Court has been concerned with for many weeks—I have had to conclude that even the appearance of evil to require disqualification must be an appearance of evil with a rational basis to it.

> The Court concludes that it would not be rational to assume that this Court or any court would be affected in its judgmental abilities on the basis of the facts developed by Sun Ship.

> .   .   .   [T]he Court simply cannot conceive of a judicial system working well if courts and judges must disqualify themselves on this basis.

Bench Opinion, Joint Appendix at 82–84.

On January 8, 1976, however, the court filed a written opinion which reached the opposite result, explaining that the "process of writing the opinion has brought about a change in the Court's conclusion."[6] The findings of fact remain unchanged in the written opinion, which displays the same confidence that the court could hear the case with "complete impartiality." What is different is the judge's perception of the *legal effect* of his status as a customer of VEPCO.

The judge drew upon three sources in developing a five-point test or standard for recusal. First, the judge relied upon Canon 3C of the ABA Code of Judicial Conduct, which provides in pertinent part:

> Disqualification (1) A judge shall disqualify himself in a proceeding *in which his impartiality might reasonably be questioned,* including but not limited to instances where  .  .  .  (C) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a *financial interest in the subject matter in controversy* or in a party to the proceeding or *any other interest* that could be substantially affected by the outcome of the proceeding.

(Emphasis added.)

Next, the court considered the unamended version of 28 U.S.C. § 455, which reads:

> Any justice or judge of the United States shall disqualify himself in any case in which he has a *substantial interest,* has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein.

(Emphasis added.)

After this suit was filed, an amendment to Section 455 became effective, but by its own terms the amended section "shall not apply to the trial of any proceeding commenced prior to the date of this Act  .  .  .." Section 3, Pub.L. 93–512, 88 Stat. 1609 (*Dec. 5, 1974*). Although the

---

**4.** It is our impression that VEPCO does not furnish power to an extreme western part of Virginia and perhaps an area north and west of Charlottesville. Judges who reside in such areas would not, of course, be ineligible.

**5.** Bench Opinion, Joint Appendix at 77.

**6.** Memorandum Opinion, Joint Appendix at 86.

judge correctly ruled that the amended section was thus inapplicable to the case at bar, he felt that "the appropriate approach to the question would include consideration of the more lately expressed intent of Congress and thus the Court shall consider both the amended and unamended versions of Section 455 in rendering its decision." [7] The amended statute reads:

(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

．　　．　　．　　．　　．

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a *financial interest in the subject matter in controversy* or in a party to the proceeding, *or any other interest that could be substantially affected by the outcome of the proceeding*:

．　　．　　．　　．　　．

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

．　　．　　．　　．　　．

(4) *"financial interest"* means *ownership of a legal or equitable interest, however small,* or a relationship as director, adviser, or other active participant in the affairs of a party.

(Emphasis added.)

From these three authorities the trial judge fashioned the following test for disqualification under the circumstances of the case at bar:

In light of the above authorities, the Court finds that it must be able to answer each of the following questions in the negative if it is to remain as judge of the case: (1) does the Court have a "financial interest" in the subject matter in controversy; (2) does it have any direct and personal pecuniary interest in the case; (3) does the Court, in its opinion, have a substantial interest herein; (4) does it have any interest of such a nature that its impartiality may reasonably be questioned; (5) does it have any other interest that could be substantially affected by the outcome of the proceeding.

Memorandum Opinion, Joint Appendix at 89.

Upon review of the facts, the trial court answered in the negative questions one through four of its test. The court concluded:

After reviewing all the essential allegations pertinent to the disqualification issue, and weighing the possible personal benefits which might accrue to the Court from a plaintiff's verdict, against the reasonableness of the appearance of partiality resulting therefrom, the Court is satisfied that this judge's status as a ratepayer would not convey the appearance of bias or lack of impartiality to a man of reasonable judgment. The possibility of pecuniary benefit is so conditional, so remote, and so equally shared by all Vepco customers, that any challenge to the Court's objectivity on that possibility is without reasonable foundation. Were the relationship between the Court and plaintiff more direct, the benefits of a plaintiff's verdict more certain, a different situation might be presented. However, the facts involved herein are sufficient to protect the Court and the judicial process from any reasonable suspicion of bias or prejudice in deciding the matters in issue.

Memorandum Opinion, Joint Appendix at 93.

This left question five, which embodies the requirements of amended Section 455. For reasons which are analyzed in great detail in the opinion, the district judge felt that he *did* have "any other interest that could be substantially affected by the outcome of the proceeding."

It is clear that the judge was not happy with the result:

---

**7.** *Id.,* at 88.

Even though this Court is critical of the language of [amended Section 455], it nevertheless feels ethically compelled to respect the generally accepted and congressionally approved view, at least in the absence of alternatives from higher authority. Although the Court is of the firm conviction that whatever interest it may have in the outcome of this law suit will not affect its objectivity in rendering a judgment strictly in accordance with the law, the Court, if err it must, wants to err on the side of the consensus as articulated in the language of the amended statute.

The Court is compelled to add that the amendment, intended to remove uncertainty, has not accomplished its purpose so far as this Court is concerned. The commentators' remarks concerning the amendment have served to confuse rather than clarify. The potential prejudice to utilities and similar business concerns whose services are shared by the general public which would result from the literal application of the statute dealt with herein is incalculable. The efficient administration of justice would be severely hampered if judges are forced to engage in musical chairs in order to insure the attainment of a standard which, on its face, exacts a level of compliance that ignores the realities of human interaction.

Memorandum Opinion, Joint Appendix at 102.

To summarize, the trial judge held that existing legal authorities did *not* require recusal, but that amended Section 455 did. Significantly, the trial judge viewed his decision, affecting all federal judges in Virginia, as one involving "significant *legal* issues"[8] (emphasis added), and on his own motion certified the decision for immediate appeal to this court pursuant to 28 U.S.C. § 1292(b).[9]

## II.

VEPCO seeks review of the trial judge's decision on two theories. First, VEPCO has petitioned this court for permission to appeal under Section 1292(b). Fearful that we might decline to hear the interlocutory appeal, VEPCO has also petitioned for a supervisory writ of mandamus directing the district court to reconsider its recusal in light of legal principles purged of error. We tentatively accepted jurisdiction of both petitions subject to further consideration following briefing and argument.

■ We hold that we may justifiably accept jurisdiction of the interlocutory appeal and that petition for mandamus also lies.

A. Title 28 U.S.C. § 1292(b) reads as follows:

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a *controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation,* he shall so state in writing in such order.

(Emphasis added.)

■ We are convinced that the judge's decision and his certification of the issue are based upon his understanding of the *law* ; his analysis of both the old and the new statute in formulating his five-point legal standard for disqualification reinforces this belief. Ordinarily, we agree, the decision to sit or not to sit is within the sound discretion of the trial court and is not properly appealable under Section 1292(b). *E. g.,* 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3553, at 354 (1975). In this case, however, a careful reading of the judge's bench and written opinions discloses his conviction that controlling legal principles effectively undermined his discretion. The judge here did not do what he personally thought he *ought* to do; he did what he believed he was *required* to do. Indeed, he was critical of the amended statute which, he felt, need-

---

**8.** Memorandum Opinion, Joint Appendix at 103.

**9.** Order, January 8, 1976, Joint Appendix at 104.

lessly required his recusal. The judge's decision is thus seen as a failure to exercise his informed discretion.

Moreover, although framed in terms of recusal, the stated reason is his *status* as a VEPCO customer. Since Sun Ship's motion went beyond recusal of this particular judge and asked that no other judge similarly situated be assigned to the case, the result of the judgment entered is to disqualify all other Virginia judges as a matter of law. Obviously, no one judge may, as a matter of discretion, disqualify others.

We are of the opinion that there exists a "substantial ground for difference of opinion," both as to amended Section 455's role in this case and as to its ultimate impact as well. In addition, we have no doubt that resolution of the issue before us on appeal will "advance the ultimate termination of the litigation." The judge below has spent long months mastering the factual background of this complicated lawsuit, and has found as a fact that "[i]f the decision rendered herein is not in accordance with the intent of Congress in enacting § 455, much time, expense and effort will have been needlessly wasted while another 'qualified' judge can familiarize himself with the volumes of pleadings and documents which this case has already generated." In an effort to prevent such waste,[10] and aware that his order impaired the eligibility of other judges, the judge certified his decision as a question of *law* for interlocutory appeal, and did so *sua sponte.*

We are also struck by the realization that if this issue is to be reviewed at all, it must be considered now. It is most unlikely that the original disqualification could provide an appealable issue after a trial and judgment on the merits. In *Kelley v. Metropolitan County Bd. of Educ.,* 479 F.2d 810 (6th Cir. 1973), the use of a Section 1292(b)

appeal was approved to review a district judge's decision to recuse himself under 28 U.S.C. § 144 (bias and prejudice). We find Judge McCree's concurrence persuasive:

> I agree with the majority that we have jurisdiction to hear this appeal from the order of the District Judge recusing himself. Although the order lacks finality in the sense that it does not dispose of the case by its nature (unlike an order denying a motion for recusal) . . . it would not likely be reviewed if the second judge should make a final decision that caused appellant to feel aggrieved. Accordingly, if it is to be reviewed at all, it must be reviewed now, and I agree with my colleagues that we should proceed to the merits.

479 F.2d at 811 (McCree, C. J., concurring).

We also agree with the distinction drawn between orders granting and denying motions for recusal:

> We recognize that this court has held that a District Judge's *denial* [original emphasis] of a motion to disqualify under 28 U.S.C. § 144 (1970), is not a final and appealable order. . . . We do not, however, feel that these cases necessarily control a District Judge's *grant* [original emphasis] of a motion to disqualify in a case wherein he has already entered a decree in equity, which decree he has a continuing responsibility to administer, *along with a substantial background of experience* [emphasis added].

479 F.2d at 811, n.1.

We regard the trial judge's recusal as a decision that neither he nor any other Virginia judges could, as a matter of law, continue to sit on the case. Thus, the requirements of Section 1292(b) are met, and upon certification by the trial judge, we accept jurisdiction of the appeal.

---

**10.** We are informed by counsel that there is now pending a Motion for Partial Summary Judgment seeking to limit recoverable damages, if any, to $3.1 million. This motion is some 61 pages long and contains an appendix of 219 pages. Appellant's Brief at 10. This motion and others like it sure to follow dramatize the complexity of the case, and we regard

it as highly unlikely that a new judge would be competent to rule on such a motion without first attaining complete mastery of the litigation to date. Delay and duplication of effort will inevitably result if the recusal is affirmed. Such waste ought to be avoided if at all consistent with applicable legal and ethical standards.

**B.** The All Writs Statute [11] authorizes this court to issue writs of mandamus to district courts in the circuit. Historically, mandamus has been considered a proper remedy for interlocutory review in cases where the district court clearly abused its discretion or usurped and misapplied federal judicial power. *See, e. g., Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953). In recent years, however, federal courts, with the Supreme Court's approval, have come to appreciate the usefulness and flexibility of mandamus in other, less extreme, situations. In particular, mandamus has emerged as an appropriate remedy in the supervision of district courts by the various courts of appeals. *LaBuy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). This circuit has indicated its acceptance of the "more modern ground for the issuance of mandamus—the exercise of an appellate supervisory power," *Colonial Times, Inc. v. Gasch,* 166 U.S.App.D.C. 184, 509 F.2d 517, 524 (1975). *See, e. g., General Tire & Rubber Co. v. Watkins,* 373 F.2d 361 (4th Cir.) (en banc), *cert. denied,* 386 U.S. 960, 87 S.Ct. 1031, 18 L.Ed.2d 109 (1967).

We are unanimously of the opinion that the case should be transferred to the Northern District of Ohio in order to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues.

.     .     .     .     .

. . . We are not concerned here only with the rights of private litigants which we feel in any event will not be impaired in the least by transfer. Nor are we concerned only with the problem of whether or not we shall ultimately lose our jurisdiction to review to another appellate court. *Rather, our interest is with effective administration and supervision of the courts of our circuit.* It is obvious that if we postpone action until appeal after final judgment, the question will have become moot and the damage done. We do not believe that the rule developed in those cases was intended to prevent our acting in this extraordinary situation.

We are not here permitting use of mandamus as a substitute for interlocutory appeal, which is, with a few statutory exceptions, prohibited in the federal courts. See 28 U.S.C. §§ 1291–92. *Rather, we are using the writ for a purpose for which we think it was intended—to correct a wrong to the court which otherwise can never be effectively presented on appeal.* The order of the district court is reversed; the writ will be issued.

373 F.2d 362, 370 (emphasis added). *See also, United States Board of Parole v. Merhige,* 487 F.2d 25 (4th Cir.), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974); *United States v. Hemphill,* 369 F.2d 539 (4th Cir. 1966).

We believe that the issue raised in VEPCO's petition presents a proper case for issuance of the writ. If VEPCO is right and the trial judge is wrong, the remedy of supervisory mandamus will not only prevent enormous waste of judicial time and energy, but will guide the district judges in their treatment of a problem unlikely ever to present itself for traditional appellate review in this court.[12] The nature and seriousness of the problem lead us to accept jurisdiction of VEPCO's petition for a writ of supervisory mandamus.

---

**11.** Title 28 U.S.C. § 1651 provides in pertinent part:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

**12.** The "judge-as-customer" problem is not as unique as one might think. Counsel for VEPCO has brought to our attention two other pending cases involving VEPCO's fuel adjustment clause. The aggregate damages claimed in these two suits total over one half *billion* dollars. Reply Brief of Appellant at 6.

### III.

■ As noted above, amended Section 455 expressly states that its standards for disqualification "shall not apply to the trial of any proceeding commenced prior to the date of this Act . . . ," Section 3, Pub.L. 93–512, 88 Stat. 1609 (*Dec. 5, 1974*). The trial judge stated, and we agree, that amended Section 455 did not apply to this case; yet, the judge abdicated the exercise of his sound discretion in favor of what he considered to be the mandate of the statute. If the unambiguous language of the Congress quoted above is to be given its intended effect, the trial judge's written opinion cannot be affirmed. *Girard Investment Co. v. CIR*, 122 F.2d 843 (3d Cir.), *cert. denied*, 314 U.S. 699, 62 S.Ct. 479, 86 L.Ed. 559 (1941). In basing his decision upon amended Section 455, which is by its own terms inapplicable, the district judge committed an error of law.

But the judge's error in applying as the law of the case a statute not yet in effect, although significant with respect to the appealability of the order, is of no great consequence with respect to the result. That is so because the new statute closely tracks Canon 3C, and clearly the district judge appropriately examined Canon 3C as a guideline in the exercise of his sound discretion.[13]

■ We think the district judge did not read Canon 3C (and amended 455) correctly. Canon 3C(1)(c) provides that a judge shall disqualify himself in an instance where "he knows that he . . . has a financial interest in the subject matter in controversy *or* in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding . . . ."[14] Financial interest is defined by the Canon (and also the amended statute) to mean "ownership of a legal or equitable interest, however small . . . ."

We think it demonstrable that Judge Warriner did not "own" a legal or equitable interest in the subject matter of the controversy.[15] The only interest the judge has in the subject matter is the remote contingent possibility that he may *in futuro* share in any refund that might be ordered for all VEPCO customers. Such a contingent interest does not presently exist and will not be created by any judgment that may be entered in this litigation. Neither Judge Warriner nor any other customer of VEPCO will have a claim for refund until, if ever, there occurs an intervening and independent decision of a state agency, the Virginia State Corporation Commission, which regulates public utilities. The Corporation Commission is not a party to the proceedings below. It will never become interested in the subject matter in controversy unless VEPCO recovers substantial damages that are predicated upon fuel charges which VEPCO was allowed to collect from its customers under the Corporation approved fuel adjustment clause. Even then, whether to order a refund, in what amount, and over what period of time, will depend entirely upon the exercise of regulatory authority of the Corporation Commission which exercise is wholly beyond the control of the trial judge in this litigation.

The possibility of the judge getting a refund is closely analogous to what is

---

**13.** It is possible to interpret Canon 3C quite differently from amended Section 455. One can reasonably view the Canon's thrust as being directed to situations "in which [the judge's] impartiality might reasonably be questioned"; and to view all subsequent clauses as subordinated to that overriding purpose. Indeed, the form of the Canon suggests such an interpretation. The other thoughts are indented and preceded by small letters rather than superior successive arabic numerals. Thus if the judge concludes that his impartiality may not reasonably be questioned he need not perhaps look at subsections (a) through (e); and if he does read them, he may read them as *illustrations* of the principle embodied in arabic 1.

But such a construction does not accord with the history of the Canon, and for purposes of this decision we read the Canon exactly as amended 455. In any event, the question is largely academic for the amended statute became effective December 5, 1974, and will likely control most decisions on motions to recuse.

**14.** The words of amended 455 are identical.

**15.** It has not been suggested that the judge owned any legal or equitable interest in VEPCO or any of the other parties to the proceeding.

known as a "bare expectancy" in property law. The classic example of one who holds a bare expectancy is the heir apparent to a living ancestor. *If* the heir apparent outlives the ancestor, and *if* the ancestor does not dispose of all his property and other assets during his lifetime, and *if* the ancestor dies intestate and *if* the state legislature does not modify the laws of intestate succession, then the heir apparent can expect to inherit something. Property law regards such an interest, which can be divested at any time at the whim or caprice of someone over whom the holder of the interest has no control, as of no legal significance:

A different situation arises where an expectant heir or distributee or an expectant beneficiary under a will attempts to convey his bare expectancy to a stranger. . . . If the conveyance of the bare expectancy is by quitclaim, without consideration, it is without legal effect. The statement usually made by the courts is that *a bare expectancy is not assignable at law because the grantor has nothing to assign.*

.  .  .  .  .

In the case of *the bare expectancy*, the property itself, of course, has existence in the hands of the ancestor, but, so far as the heir or devisee is concerned, it *may be termed nonexistent.*

.  .  .  .  .

.  .  . It appears that *the holder of a bare expectancy has no standing in a court of law or equity* in the lifetime of the ancestor or devisee. He cannot sue for the cancellation of a conveyance, nor to quiet the title, nor to have a fraudulent conveyance set aside, nor to restrain waste. . . . If statutes change the course of descent and distribution, the expectant heir is not deprived of property without due process of law.

I Simes, *Future Interests*, Ch. 16, § 234 at 413–16, § 239 at 422–23 (1938) (emphasis added).

At most it is a *mere hope or expectation* . . . and hardly reaches the height of a property right, much less a vested right. . . .

*Robinson v. Eagle-Picher Lead Co.*, 132 Kan. 860, 297 P. 697, 698 (1931).

.  .  . [A] mere hope unfounded in any limitation, provision, trust or legal act whatever.

*Elliott v. Leslie*, 124 Ky. 553, 99 S.W. 619, 621 (1907).

"Expectancy" is the bare hope of succession to the property of another, such as may be entertained by an heir apparent. Such a hope is inchoate. *It has no attribute of property, and the interest to which it relates is at the time nonexistent and may never exist.*

*Johnson v. Breeding*, 136 Tenn. 528, 190 S.W. 545 (1916) (emphasis added).

We believe Judge Warriner "owned" just what the owner of a bare expectancy has— nothing at all. Not only is absolute control by a third person of a *res* in itself inconsistent with the concept of ownership, the interest of Judge Warriner in a refund is so speculative as to lack the necessary incidents and attributes of property which can be the subject of "ownership."

■   Since we are convinced that the district judge lacked "ownership of a legal or equitable interest, however small," it is clear that he had no "financial interest" in the subject matter in controversy for financial interest is defined in those terms.

■   But that is not the end of the matter because the Canon (and amended 455) disqualifies a judge who has "any other interest that could be substantially affected by the outcome of the proceeding." Unlike "financial interest," the term "any other interest" is not defined in terms of ownership or in any other manner. It is not easy to conclude what the term means. But it must have been the congressional intent to make an interest of lesser degree than ownership disqualify. That would seem to be so for otherwise there would be no purpose in defining financial interest in terms of ownership and failing to apply such a limitation on "any other interest." We thus conclude that the trial judge's "bare expectancy" or chance, if you will, to get a refund consti-

tutes an "other interest" within the meaning of the Canon. In distinguishing "financial interest" from "any other interest," Professor Wright acknowledges that the latter interest is necessarily an imprecise one. He suggests, by reference to another commentary, that whether any other interest is disqualifying may "depend on the interaction of two variables: the remoteness of the interest and its extent or degree."[16] Note, *Disqualification of Judges and Justices in the Federal Courts*, 86 Harv. L.Rev. 736, 753 (1973). That commentator gives this further illustration:

> If the interest strongly resembles a direct interest—for example, stock held in a subsidiary (or parent) of the corporate party—*any amount should disqualify*, just as does any stock held in the party itself. *As the interest becomes less direct*, such as that in an enterprise carrying on business with the party, *only if the extent of the interest is itself substantial can the judge's impartiality reasonably be questioned*.

*Id.* (emphasis added).

Professor Wright suggests that such an analysis will relate to cases in which the judge is a ratepayer to a party to a proceeding.

Professor Thode, in his *Reporter's Notes to Code of Judicial Conduct* at 66–67 (1973), has this to say:

> Although being a rate payer does not involve "ownership of a legal or equitable interest" in the party to whom the judge made such payments, the committee concluded that *at some point* a relationship to a party as a utility customer . . . should disqualify a judge. The test is that a judge should disqualify himself if the outcome of the proceeding could substantially affect his interest as a customer of the utility . . . .

(Emphasis added.)

The last sentence is a model of ambiguity, but we think it means that the *de minimis* concept is not ruled out for otherwise the words "at some point" in the preceding sentence are meaningless.

It is quite significant, we think, that the words "however small" apply only to a "financial interest." Their meaning is perfectly clear. If a judge has an ownership interest in a party or in the subject matter in controversy, it matters not at all whether the interest is a large or infinitesimally small amount. But that is not so with respect to "any other interest." The difference is a sensible one. A monetary or financial interest is by its very nature such an interest that may generate doubt as to a judge's impartiality. What is a small sum to one person may not be to another. But a "bare expectancy" or chance to ultimately benefit on an equal basis with all other customers is not so suspect in nature. And that is why, we think, Congress did not see fit to add the words "however small" to modify "any other interest." Thus a judge who is a customer of a company must necessarily consider the remoteness of the interest and its extent or degree. We have already demonstrated that Judge Warriner's interest here is remote and speculative and that whether he ever gets any refund benefit will not be determined by him nor by the result of this litigation.

We are inclined to agree with the district court that $70 to $100 cash in hand is not *de minimis*. But when the possibility of recovering that amount is spread over the next 40 years, is dependent upon VEPCO winning the lawsuit and the full amount claimed, collecting the judgment, and the Virginia State Corporation Commission requiring VEPCO to return increased fuel costs to its customers, we doubt that anyone other than Jimmy the Greek would offer anything for the judge's chance. A reasonable man would doubtless prefer a $2 ticket at Churchill Downs on the first Saturday in May. We hold the judge's "any other interest" in VEPCO's speculative recovery was *de minimis* and his finding to the contrary clearly erroneous.

---

16. C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3547 at 365 (1975).

We vacate the order of recusal and remand to the district court for reconsideration of its decision in light of what we have said in this opinion, and with these further instructions. In determining whether he should continue to sit, the district judge should regard himself as bound by the fundamental fairness doctrine of the Due Process Clause of the fourteenth amendment, and also bound by the enactment of the Congress in unamended Section 455. The district court may also properly consider as an aid to the exercise of his informed discretion any and all codes of judicial conduct, including Canon 3 of the American Bar and any advisory directives of the Judicial Conference of the United States. We agree with Judge Hemphill that "the actions of the Judicial Conference, of course, are entitled to great respect." *Duplan Corp. v. Deering Milliken, Inc.*, 400 F.Supp. 497 (D.S.C.1975).

Having considered the applicable law and the advisory sources, the district judge should then exercise his own sound discretion. If he should believe that factors exist which will cloud his impartiality or interfere with his ability to try the case fairly and objectively, then he should not hesitate to reaffirm his recusal. On the other hand, if the judge concludes that he can fairly sit and that it makes judicial sense that he continue in the trial of the case, he may do so with the confidence that his integrity may not be justifiably impugned and with the certainty that neither he nor any other Virginia judge is disqualified as a matter of law.

### IV.

As to the form of our order remanding the case, we think it unnecessary to issue a writ of mandamus. Instead, our mandate will issue pursuant to 28 U.S.C. § 1292(b).

*VACATED AND REMANDED WITH INSTRUCTIONS.*