"This case is before the court on defendant’s request for review of a determination by the Chief of the Trial Division *990 under Rule 14(d). We heard oral argument en banc and our conclusion is that the determination must be vacated. Our order herein is substituted in lieu thereof.
"The litigation seeks to establish Government liability and to obtain reasonable and entire compensation under 28 U.S.C. § 1498, for use of an invention described or covered in a patent, without license of the owner thereof. On December 15, 1975, the case was transferred to the then newly appointed Trial Judge Francis C. Browne as part of the administrative distribution of the patent case workload among our two patent trial judges. He has handled it ever since. A trial has been conducted and proof closed. The parties have submitted their requested findings and briefs, but no recommended decision has been made.
"Rule 14(d) is concerned with removal of a trial judge from a case for 'personal bias or disqualification.’ Defendant moved under it on July 15, 1977, for an order disqualifying Judge Browne. There is no affidavit of bias or prejudice as the rule calls for, but that rule cannot be followed where, as here, the moving party does not contend the trial judge is biased or prejudiced, only that he is legally disqualified. It is agreed by both parties that he has no bias or prejudice for or against either party. As to this, no other conclusion would be possible. But now, more than ever, disqualification may be mandatory on technical grounds that have remote if any connection with any unfitness to adjudicate the case, due to real bias or prejudice.
"Before his appointment as our trial judge on December 15, 1975, Judge Browne had been in private practice for many years in the patent bar, in which he was well known as an expert. He was never personally connected with the instant case. But William E. Schuyler, Jr., Esq., was his partner from 1951 to 1969. During that period, in mid-1966, the plaintiff company consulted Mr. Schuyler concerning the claims of the as yet unissued Williams patent, (now No. 3,758,051) the claims of the previously issued original McLean patent (No. 3,216,674) and the fact that the patent examiner had cited the latter in connection with the application for the former. Mr. Schuyler advised plaintiff that in his opinion there were unnecessary limitations in *991 the original McLean patent which could be eliminated by the timely filing of an application for a reissue patent, and if the limitations were eliminated, its claims would dominate the Williams claims. He recommended that plaintiff acquire the rights to the original McLean patent and seek a determination whether it could be reissued. There is no claim that this was improper advice and Mr. Schuyler was not the one who carried it out. He did not appear in the patent office proceedings. But he is an important witness in the case. Plaintiff did do as advised, and is suing here for infringement of the Williams patent. Defendant claims invalidity through an affirmative defense which sets up that the Williams patent is unenforceable because of alleged misconduct of plaintiff in failing to disclose to the patent examiner the facts and circumstances relating to the prosecution of the application for and the issuance of the reissue McLean patent.
"Mr. Schuyler’s testimony is by deposition. It is not disputed and perhaps it could have been stipulated, but the fact remains it is in the case as testimony.
"Trial Judge Browne on first taking the case raised with counsel another possible ground for disqualification, not here involved. Mr. Schuyler’s connection was not then known. It came into the case by the testimony of plaintiffs patent agent, Noel B. Hammond, in a deposition on January 21 and 23, 1976. The development was disclosed to Judge Browne on February 4, 1976, and by memorandum of February 6, he indicated that the parties might depose Schuyler and, if they did, his (Browne’s) disqualification would be considered at a later date. On April 8, 1976, Mr. Schuyler was deposed. Defendant, by letter of June 8, 1976, indicated that Schuyler’s name was and would in the future be in the case, and whether this concerned Browne was left to his discretion. On June 15, 1976, Browne indicated in a conference memorandum that he had discussed his disqualification with counsel, but in the absence of an indication by counsel for either side, that there was 'any appearance of impropriety’ in his continuing in the case, he would not ask for its transfer. Trial was thereafter conducted.
*992 "On May 5, 1977, in connection with its post-trial submissions, defendant for the first time suggested recusal, saying that 28 U.S.C. § 455(b)(2) mandated it. That amendment to § 455 of the Code was approved December 5, 1974, Pub.L. 93-512, 88 Stat. 1609. Defendant states that this amendment had been unknown to defense counsel until shortly before May 5, 1977. Plaintiff continued to assert then and thereafter (as it did before us) that the amended statute did not apply. Defendant filed its pending motion for disqualification on July 15, 1977. The intervening communications need not be detailed as we deem them not relevant.
"Few things Congress ever said or did attracted more attention by sitting Federal judges than the above legislation in its progress towards enactment, but we cannot assume that what was important to us was equally important to others. The presumption that official actions are taken in good faith is a strong one. Knotts v. United States, 128 Ct. Cl. 489, 492, 121 F.Supp. 430 (1954). We must and do, therefore, conclude that defendant really did not discover the statute until the time it says it did. Its disposition to judge charitably now is tempered by its concern about possibly getting a void decision. It will have to live with the suspicion of others, which we do not say is well founded, that it kept its blockbuster under wraps until the time arrived to explode it with maximum disruptive effect. Our duty is to follow the law without regard to considerations of that kind. The court is now required to engage in self-policing, in which the conduct and motives of the parties are irrelevant.
"We deem this case is governed by the concurrent application of the above statute and of the Code of Judicial Conduct for United States Judges. The Code of Judicial Conduct is the earlier in time so we quote it first:
C. Disqualification
(1) A judge shall disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
*993 (b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness. concerning it; [69 F.R.D. at 277] The statute, cited supra, reads:
§ 455. Disqualification of justice, judge, magistrate, or referee in bankruptcy.
(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
(b) He shall also disqualify himself in the following circumstances:
* * * # *
(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
* * * * *
There is also for consideration the effective date provision, Section 3, which reads as follows:
Sec. 3. This Act shall not apply to the trial of any proceeding commenced prior to the date of this Act, nor to appellate review of any proceeding which was fully submitted to the reviewing court prior to the date of this Act.
And it was approved as stated, December 5, 1974. This was after the petition was filed, but before the trial began, in the case before us. The antecedent of the word -"commenced” is unclear, because of which there may be some ambiguity in the statutory language, as applied to the facts herein, but the legislative history resolves it. House Report No. 93-1453, 93d Cong., 2d Sess., entitled Judicial Disqualification, reads as follows at 12, 3 U.S. Code Cong. and Adm. News (1974) 6351, 6362:
Section 2 [the present 3] makes the bill inapplicable to trials commenced and to appellate matters which *994 were fully submitted prior to the effective date of this Act.
Under date of April 23, 1975, Carl H. Imlay, Esquire, General Counsel to the Administrative Office of the United States Courts, sent a memorandum to All Federal Judges and United States Magistrates, in which he commented on Section 3 at p. 9. He quoted the above language and went on:
This language appears to clarify that the law’s disqualification provisions were intended to apply in those district court cases filed prior to December 5, 1974, so long as the trial in the case did not commence until after that date. The legislative intent appears to be that the new standards of disqualification should apply as fully and immediately as possible without the interruption of ongoing trials.
He included us in his distribution and there is no reason to doubt that the term 'district court’ as used by him is not exclusive of us. This is not exactly the conventional case of contemporary administrative construction of a statute, but many of the same reasons for respecting it apply. He had ample reason to be well acquainted with the legislative intent, having closely monitored the whole progress of the statute. We conclude that the statute applies to this case because, though filed before December 5, 1974, trial had not then begun. The court in In re Virginia Electric & Power Co. v. Sun Shipbuilding & Dry Dock Co., 539 F.2d 357 (4th Cir. 1976), comes to a contrary conclusion to ours, but only as an alternative ground. It does not advert to the legislative history or Mr. Imlay’s memorandum.
"This court expressly made the statute applicable to our trial judges, by our General Order issued January 6, 1975.
"There is, however, no reason to treat the Code of Judicial Conduct as preempted. The Judicial Conference does not take this view, for it has amended the Code since the Act in a manner that assumes its continued vitality. The report cited, supra, at 12, 3 U.S. Code Cong. and Adm. News (1974) at 6361, indicates that the Congress wanted both to run parallel, to eliminate the confusion that would exist if the statute and the Code of Judicial Conduct were different, as they were up to December 4, 1974, far more *995 widely than since. In an instance, such as this does not appear to be, of different standards, the stricter one would control.
"The statute differs from the Code of Judicial Conduct, in that the statute eliminates an ambiguity some have found in the Code, reading specific disqualifications such as the one for prior service of a partner, here involved, as effective only where the judge’s impartiality might reasonably be questioned. The statute corrects this, as it cannot be so read. In any event, this construction of the Code of Judicial Conduct is mistaken as it would frustrate the whole object the Judicial Conference had in mind. This was, so far as possible, to eliminate instances where disqualification was to be decided according to the judge’s own subjective determination whether his impartiality could reasonably be questioned, looking into his own heart and observing it to be pure. The interpretation we reject would perpetuate this unsatisfactory situation.
"In Kesselhaut v. United States, 214 Ct. Cl. 124, 555 F.2d 791 (1977), we held that in a disqualification context (there a former government attorney) the word 'matter’ carried disqualifying participation back from the lawsuit itself to the transactions in which the issues litigated had their origins. This part of that decision is considered more extensively in the order of Trial Judge Schwartz that we had under review. The word 'matter’ has the same meaning here. Both statute and Code of Judicial Conduct use the phrase 'matter in controversy.’ Plaintiff says that Mr. Schuyler is not involved in controversy, in that his testimony is not controverted, and his advice, as testified to, is not challenged by anyone as wrongful. This interpretation of the language did not impress the Fourth Circuit, In re Rodgers, 537 F.2d 1196 (1976). A rule of reason might be urged where the involvement as attorney or witness concerns only some petty or insignificant act, as, e.g., having mailed a letter. Mr. Schuyler’s involvement is not of that character. A fine analysis óf the precise nature of it, and efforts to guess the extent, if at all, to which it might influence the trial judge’s mind, would bring speculative and subjective considerations into play, which the statute *996 and the Code of Judicial Conduct seek to banish from the area.
"It is unfortunate that the impact of the new standards in this case may impose added cost and delay upon the parties, added expenditure of judicial resources by this court, and the loss of work already performed. These evils can be reduced or eliminated, in the future, if everyone acting in a judicial capacity gives affirmative consideration to the Code of Judicial Conduct and the statute, separately with respect to every case, as to which he is asked to take any kind of action, and without waiting for moves by the parties. Nothing less than this will suffice. Both the Judicial Conference and the Congress undoubtedly took notice of the normal ease of substitution, by designation if necessary in the Federal system, when the problem is seen and acted on promptly. Since we have only two patent trial judges in our establishment, the situation is as tight here as it is likely to be anywhere. It may.be hoped that with experience in the future, it will be possible to spell out objective standards that will not be overbroad, and will not disqualify in so many instances where impartiality' could not reasonably be questioned, as here. That is not the case at present, and is the reason why one’s own consciousness of purity of heart cannot be a safe guide by itself. Here we must remove from a case one of the few qualified experts available to us in a complex and esoteric field, on account of technical disqualification, although no one challenges his impartiality, and the facts suggest no reason why anyone should. Yet we remember the few unhappy incidents that instigated a morbid and growing disbelief in the integrity of the Federal judiciary, and we cannot fault the efforts on the part of the Judicial Conference and the Congress to correct the situation. We hope that this and other inevitable hard cases will bring about a continued study of the problem. Neither the Judicial Conference nor Congress can put it aside as disposed of. Meanwhile, there is nothing for us to do but abide by the rules that have been given us.
"The Imlay memorandum raises, without answering, a question whether a failure to abide by the statute might produce a decision void for lack of jurisdiction. Defendant *997 has the same concern. We need not answer the question here, but advert to its existence as further mandating exact and literal compliance.
"Whether the new trial judge is to base his decision on the existing record must be left to his discretion. The defendant we consider has estopped itself from even asking any reopening of the proofs, and we do not accord the plaintiff that privilege as of right. If the proofs are reopened to allow plaintiff to introduce new evidence, defendant of course may offer rebuttal evidence.
"Trial Judge Browne, since oral argument but before we had announced our decision, indicated he now desires to recuse. Since he has not actually done so, the matter is not moot. We further consider this order necessary under our supervisory responsibilities.
"Accordingly, review of the trial judge’s determination is granted, said determination is vacated, and the Chief of the Trial Division is directed to transfer the case forthwith to another trial judge.”