In re LETTERS ROGATORY FROM the SUPREME COURT OF ONTARIO, CANADA.

Misc. No. 87–0658.

United States District Court, E.D. Michigan, S.D.

June 16, 1987.

---

Abraham Singer, Jay Brant and Susan Murnane, Asst. U.S. Atty., Detroit, Mich.

## ORDER AND OPINION

COHN, District Judge.

This is a matter relating to letters rogatory on behalf of a Canadian proceeding. The Court's jurisdiction is grounded on 28 U.S.C. § 1782.[1] For the reasons that follow, I am recusing myself, and the subpoena in the proceeding will be supervised by another judge from this district.

### I.

#### A.

On May 21, 1987, the United States Attorney for the Eastern District of Michigan applied to me[2] for an order under section 1782 appointing the Honorable Justice Campbell Grant[3] as Commissioner for the purpose of taking the testimony and documents of John E. Amerman and Meyer Morganroth, United States citizens, with regard to a judicial proceeding between Her Majesty the Queen and Joseph Burnett and Burnac Corporation, formerly Ruthbern Holdings Limited (hereafter referred to collectively as "Burnett"). The application also sought the issuance of subpoenas to Amerman and Morganroth for this purpose. The application was made pursuant to letters rogatory[4] (letters of request)

---

1. "(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

"A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

"(b) This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him." As amended Oct. 3, 1964, Pub.L. 88–619, § 9(a), 78 Stat. 997. See also 22 C.F.R. § 92.67.

2. On May 21, 1987, I was the presiding judge pursuant to Local Rule 9(a) of the Eastern District of Michigan. As the presiding judge, it became my responsibility to "handl[e] and dispos[e] of all miscellaneous duties arising in cases and matters not assigned according to these Rules to a specific District Judge."

3. Deputy Judge of the Federal Court of Canada, Trial Division. Mr. Justice Grant received his Canadian commission to examine Amerman on April 30 from the Deputy Registrar for the Supreme Court of Ontario for York Region. The commission and letter of request as to Morganroth followed on May 6.

4. There was one letter rogatory for each of the two witnesses. Morganroth's role is not at issue at this stage, and further references will be to the letter rogatory regarding Amerman only.

from the Local Registrar for the Supreme Court of Ontario, which is the foreign tribunal supervising the proceeding.[5] Pursuant to section 1782, the letters rogatory set forth the applicable practice and procedure for the taking of testimony and production of documents.[6] I signed the order, and it was entered, on May 21. The order noted that, pursuant to section 1782 and the letters rogatory, while Canadian rules of evidence applied, United States privilege law applied pursuant to Federal Rule of Evidence 501.[7]

A subpoena issued from the Clerk of the Court directing Amerman to appear and give testimony. The subpoena, in its entirety, also instructed him to bring: "Any and all original books, records, and documents in your possession pertaining to the subject matter of the proceeding between Her Majesty, The Queen, and Joseph Burnett and Burnac Corporation, formerly Ruthbern Holdings Ltd."

### B.

The Commissioner began taking Amerman's testimony on May 27. On that day, the parties came before me for a ruling on an evidentiary question. The Commissioner had already ruled on the evidentiary point, and the request for my intervention was framed as an "appeal" of sorts from the Commissioner's decision. Although the parties did not present any papers or legal discussion, I indicated that I did not view section 1782 as giving me authority to interpret matters of Canadian law, but rather that I was constrained by the statute merely to enforce Amerman's appearance for the taking of his testimony and production of related documents.[8]

On May 29, in anticipation of cross-examination, Crown counsel requested that Amerman tender the subpoenaed documents so that he could review them. Amerman failed to produce any document. On that same day, the parties requested a hearing date before me to argue the enforceability of the subpoena. Due to Burnett's request to retain United States counsel, the matter was scheduled for hearing on June 2.

▮ The United States Attorney, on behalf of the Canadian tribunal, moved to enforce the subpoena by written motion on June 2. Burnett filed a written motion to "define" the subpoena on the same date.[9]

---

**5.** It was Burnett who moved for the letters rogatory pursuant to the provisions of sections 637(b) and 640(1) of the Criminal Code of Canada. Burnett, Chairman of the Board of Burnac Corporation, was indicted on November 14, 1983, for violations of the Income Tax Act of Canada. Trial commenced on October 1, 1984, and is now in its defense stage. Burnett believed that Amerman had evidence relevant to his defense. Amerman was, and is, an attorney at the Detroit law firm of Honigman, Miller, Schwartz and Cohn ("Honigman Miller"); he represented Burnett in the years 1971 to 1974 with respect to loan transactions that are the subject of the Canadian proceeding. As such, Amerman has personal knowledge of the circumstances surrounding the transactions. The letter rogatory became necessary when Amerman indicated that, for business reasons, he would not travel to Canada and would testify only in the United States.

**6.** The letter regarding Amerman incorporated Mr. Justice Grant's commission, which specified that the commission was to be conducted in accordance with Rules 34 and 36 of the Ontario Rules of Civil Procedure, a copy of which was attached to the commission and letter. The commission indicated that Canadian laws of evidence applied.

**7.** "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law."

**8.** A transcript of my May 27 ruling is attached as Exhibit A.

**9.** Although the motion is designated as one to "define" the subpoena, it is, in reality, a motion to quash. The appointment of the Commissioner and issuance of the subpoenas pursuant to the letters rogatory were handled *ex parte,* as is customary. A person objecting to a subpoena issued pursuant to a letter rogatory may move to quash. *See In Re Letters Rogatory from Tokyo District, Tokyo, Japan,* 539 F.2d 1216, 1219 (9th Cir.1976). I note the irony implicated in

Burnett argues that the subpoena is unenforceable because neither Amerman nor Amerman's law firm possesses relevant documents, and because he (Burnett) has not waived his attorney-client privilege as to those documents that the firm does possess (accounting and billing records). Amerman [10] also filed a June 2 "response" to the motion (without benefit of seeing the motion first), opposing enforcement of the subpoena on the ground that he does not possess the accounting and billing records and that the subpoena fails to designate with reasonable particularity the documents sought.

Before the hearing on the motions, I met with the parties in chambers. Suffice to say that I indicated a lack of sympathy for the position of Burnett and Amerman. At the hearing, I deferred a ruling on the substance of the motion to enforce, pending an inventory by Amerman's law firm of precisely what documents exist that may be pertinent to the commission.[11]

### C.

■ A court's involvement on a letter rogatory is narrow—much narrower than the expansive role that the parties, particularly Burnett, have attempted to draw me into. The proceeding is limited by act of Congress to the question of the enforceability of the subpoena by compulsion *See In re Letter Rogatory from Justice Court, District of Montreal, Canada,* 523 F.2d 562, 564–65 (6th Cir.1975). *See generally* 1964 U.S. Code Cong. & Admin. News 3782, 3788–90. Evidentiary questions are not to be decided by the district judge issuing the subpoena. *See John Deere Ltd. v. Sperry Corp.,* 754 F.2d 132, 136–37 (3d Cir.1985); *In re Request for Judicial Assistance from the Seoul District Criminal Court, Seoul, Korea,* 555 F.2d 720, 723 (9th Cir.1977). Under the statute and May 21 Order, applicable United States law of privilege may be a defense to the compulsion of evidence, but Amerman has not asserted any privilege.[12]

■ Although Burnett has asserted the attorney-client privilege as to a narrow group of documents, the issue is not properly before me since I am not yet compelling Amerman to produce documents to which such a privilege clearly applies. Indeed, it is impossible to know whether the privilege is a valid defense to compulsion until it is known what documents exist. At that time, Amerman may be required to produce identifiable documents, and the privilege will have to be decided by the Commissioner in the first instance as to

Burnett's attempt to undermine the commission, since it was he who requested the appointment to enable him to obtain testimony and documents in the United States. The affidavit in support of Burnett's "Motion for Issuance of Letters of Request and Commission" stated: "This Affidavit is made in support of a motion made on behalf of the accused, Joseph Burnett ... to examine viva voce in the United States of America John E. Amerman and to take custody of such exhibits as may be produced by the said John E. Amerman...." I also note that Burnett asked me to decide his motion without raising the possibility that I was disqualified to consider it, as is discussed in the text below.

**10.** Amerman is represented by his firm, Honigman Miller. Amerman's position, advanced by Honigman Miller, is that he cannot be required to produce accounting records relative to the subject loan transactions, since they are in the possession of the firm. Honigman Miller's "position" (if, indeed, it can have a separate interest in the proceeding) is that the subpoena is addressed to Amerman and does not apply to it.

**11.** Honigman Miller's subsequent search of its files revealed that all billing and accounting records have been destroyed pursuant to the firm's policy of keeping such documents for seven years only. Honigman Miller did locate numerous files related to Burnett's loan transactions, though most had not previously been requested by Burnett or the Crown. Amerman asks that I require the Crown to reimburse Honigman Miller the reasonable costs of searching and copying the pertinent records. Fed.R. Civ.P. 45(b)(2). Honigman Miller's June 11 letter to the other parties suggests that production of existing documents, if not subject to any privilege, will cost more than $20,000.

**12.** While I stated to the contrary at the June 2 hearing, I had not read the parties' papers before the hearing. Amerman's attorney promptly corrected me when I suggested that he was asserting a privilege. In any case, I have since studied the record and the law and am fully advised in the premises.

each document.[13]  Only then does the statute vest jurisdiction in the district judge to determine whether the witness may be compelled to produce a particular document.[14]  If Amerman were to produce such documents voluntarily, Burnett would have no right under the statute to ask intervention by a district judge.[15]

## II.

As a preliminary matter, I must decide whether I am disqualified from deciding the motion to enforce.  (My only involvement thus far has been listening, commenting, debating, and attempting to conciliate.) At the June 2 hearing, Burnett orally moved for my recusal; the motion was denied on the ground that it should have been in writing under the circumstances. On June 10, Burnett filed a motion to disqualify me under 28 U.S.C. § 455(b)(2).[16] The motion is grounded on my well-known prior status as a partner in Amerman's law firm during the years he represented Burnett on the underlying matters.

## A.

When the parties first sought a ruling from me on May 27, I made known my prior association with Amerman.  The parties waived any claim of bias or prejudice. I will accept that Burnett was not aware when the parties first came to me of United States law regarding disqualification of judges, since his attorney at that time is not licensed in the United States.  Even after Burnett retained local counsel, however, he asked me in his June 2 filing to quash the subpoena without raising the issue of disqualification.  Nor did his attorneys raise the issue when I met with the parties' attorneys in chambers before the June 2 hearing.  Even if I accept the representation that his attorneys *intended* to raise the disqualification issue at that time, it is nonetheless true that they *failed* to do so.  While Amerman's attorney asked me in chambers if I felt uncomfortable being involved in this matter, he did not ask me to recuse myself in my discretion and did not suggest I was required to do so *sua sponte* under section 455.

Burnett raised the issue for the first time during the hearing on the motion to enforce, and only after I had expressed a lack of sympathy for his position.  This at least raises one of the concerns expressed in the legislative history to the 1974 amendments to section 455: "[E]ach judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision."  1974 U.S. Code Cong. & Admin. News 6351, 6355. Thus, section 455 is to be construed narrowly to prevent judge shopping.  *State of Idaho v. Freeman,* 507 F.Supp. 706, 733 (D.Idaho 1981).

---

13.  I have no reason to doubt the competence or the integrity of the Commissioner in ruling on such matters.  There is no basis for believing that he will not respect a defense based on the attorney-client privilege if properly raised.

14.  At this time, it does not seem that any question of privilege *could* validly be raised by Burnett under the letter rogatory.  In the motion for the commission, Burnett requested that Amerman be compelled as a witness to produce relevant documents.  Although I need not decide the question, I observe that this would seem to be a waiver of the attorney-client privilege.  (The Commissioner so ruled on May 29, at least in regard to one loan transaction that is the subject of the prosecution.  Burnett argues that the Commissioner's ruling was *ultra vires* under the statute and letter rogatory.)  *See United States v. Nobles,* 422 U.S. 225, 239 & n. 14, 95 S.Ct. 2160, 2165, 2171 n. 14, 45 L.Ed.2d 141 (1975); 8 J. Wigmore, *Evidence* § 2327, at 637–

38 (McNaughton rev. 1961).  And, of course, since the privilege belongs to the client, the attorney may not invoke it when the client has waived it.

15.  See section (b) of the statute, *supra* note 1.

16.  "(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

"(b) He shall also disqualify himself in the following circumstances:

.     .     .     .     .

"(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it. . . . "

No argument is made that section (a) is applicable to this proceeding.

■ On the other hand, the suspect view of a recusal motion made with an eye to an adverse decision must be balanced against the primary purpose of section 455, which is to avoid the appearance of judicial impropriety. Thus, section (b) should be construed in accord with section (a) to "promote public confidence in the integrity and impartiality of the judiciary in general and of the participating judge in particular." *Potashnik v. Port City Constr. Co.*, 609 F.2d 1101, 1114 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980); *see also* 1974 U.S. Code Cong. & Admin. News, *supra.* This is not to say, however, that section (b) applies only if the judge's impartiality might reasonably be questioned, since the purpose of specifying specific situations in section (b) was to avoid any ambiguity inherent in section (a). *See In re Hughes Aircraft Co.*, 197 U.S.P.Q. 797, 800 (Ct.Cl.1977).

■ To reconcile these two competing principles for construing section 455, it is necessary to define the "matter in controversy." If Amerman's relationship with Burnett [17] (and the consequent records of the loan transactions for which Amerman supplied legal advice) is sufficiently related to the matter before me, the statute requires disqualification. The current section 455, unlike its predecessor before 1974,[18] is mandatory and no longer turns on my "opinion" as to the propriety of my sitting on this proceeding. *See Roberts v. Bailar*, 625 F.2d 125, 128 (6th Cir.1980); *In re Hughes Aircraft Co.*, *supra; In re Rodgers*, 537 F.2d 1196, 1198 (4th Cir.1976); 1974 U.S. Code Cong. & Admin. News, *supra.*

### B.

I have noted above the narrow scope of my jurisdiction in this proceeding. My involvement is limited to deciding whether Amerman can be compelled to comply with the subpoena. The only question now before me is the length of the subpoena, that is, does it reach to the files and records of the law firm and, second, what files and records are within its ambit? As I stated earlier, no claim of privilege is properly before me and, therefore, the nature of Amerman's services to Burnett is not currently in dispute. Indeed, Amerman apparently has answered all questions put to him in the course of the commission.

■ The only aspect of the "matter in controversy" currently before me is capable of resolution by reference to the law of subpoenas. It is a narrow inquiry. So long as the subpoenaed documents are identifiable and their subject matter generally known, the enforceability or not of the subpoena can be determined without examining the content of any document. A reasonable person might conclude that the narrow question of the enforceability of a subpoena is not sufficiently related to the underlying dispute to require disqualification. *Cf. Royal Air Maroc v. Servair, Inc.*, 603 F.Supp. 836 (S.D.N.Y.1985) (judge's prior involvement with party on other legal matters did not disqualify him from deciding motion to enforce arbitration agreement); *United States v. Zagari*, 419 F.Supp. 494 (N.D.Ca.1976) (judge's prior involvement in motion to quash subpoena not sufficiently related to disqualify him from tax evasion proceeding). On the other hand, I would certainly agree that I should

---

17. I have stated on the record that I had no personal involvement or knowledge of Burnett's affairs while a partner at Honigman Miller. I have also noted on the record that, while I recused myself from cases involving Honigman Miller during my first five years on the bench, for the past three years I have not viewed the Code of Judicial Conduct or applicable statutes as establishing a rigid rule against my participation in cases in which the firm is counsel of record. Indeed, no one has argued that I am disqualified simply because I was associated with the firm prior to my investiture in 1979.

18. Formerly, section 455 provided: "Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, *in his opinion*, for him to sit on the trial, appeal, or other proceeding therein." (Emphasis added.) Section 455 was amended December 5, 1974. Pub.L. 93–512, § 1, 88 Stat. 1609. Amendments not relevant here followed in 1978. Pub.L. 95–598, Title II, § 214(a), (b), 92 Stat. 2661.

be disqualified if the question of attorney-client privilege were eventually properly raised in this proceeding, since it might then become necessary to examine the contents of particular documents prepared by my former partner.

■ However, the structure of section 455, and the interpretation of subsection (b)(2) by the few courts that appear to have considered it, convinces me that the definition of "matter in controversy" is not as narrow as the legal question in the current proceeding. The result is that some matters that might otherwise be thought "unrelated" to the proceeding are considered sufficiently related to require disqualification under section 455. Throughout the other provisions of section 455, Congress made disqualification depend upon the judge's suspect relationship with the narrow "case" or "proceeding" before him. That Congress chose to ground disqualification in section 455(b)(2) on a judge's relation to service "concerning the matter" suggests that disqualification is required where the proceeding relates in any broad sense to the suspect matter, even though such has not been made part of the current proceeding. For example, where a claim or defense makes use of the testimony of the judge's former law partner as it relates to legal services he rendered on the transactions in which the issues litigated had their origins, the judge should recuse himself. *See In re Hughes Aircraft Co., supra; In re Rogers, supra.*

A judge should be part of the solution to a controversy, not part of the problem. While there is some ambiguity about whether section 455 disqualifies me, it is clear that I have become at least a small part of the problem in the case. While I disapprove of the manner in which my recusal was sought, it is better for all concerned if I withdraw. *See Bradley v. Milliken,* 620 F.2d 1143, 1156–58 (6th Cir.) (important case reassigned despite failure to satisfy section 455), *cert. denied,* 449 U.S. 870, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980).

An occasional "silly" result under section 455 is to be tolerated if it avoids casting a shadow over the individual litigation and, as importantly, prevents injury to the public perception of the judicial system before it has a chance to occur. *See Union Carbide Corp. v. U.S. Cutting Service, Inc.,* 782 F.2d 710, 712–14 (7th Cir.1986). My recusal at this time will preclude a later argument that I tainted a proceeding of obvious importance to the Canadian government. Whether Amerman or his law firm can be compelled to turn over the documents relating to Burnett is easily capable of resolution by one of my colleagues.

Accordingly, I recuse myself and forward the papers and pending motions to the presiding judge for this week.

SO ORDERED.

### EXHIBIT A

Detroit, Michigan
Wednesday, May 27, 1987

---

THE COURT: Well, gentlemen, I am prepared to make a ruling.

I find that the procedure outlined in the Commission is complete within itself.

The jurisdiction of this Court is invoked under 28 U.S.C. § 1782 which is purely procedural to assure the presence of the witness before the person conducting the examination and for no other purpose. There is no authority on my part to make substantive ruling as to the admissibility or inadmissibility of any evidence in the proceeding. The admissibility or inadmissibility of evidence is subject solely—is a matter solely for the Canadian Judicial authorities.

Congress in the enactment of 28 U.S.C. § 1782 did not intend that a United States District Judge become involved in making a substantive ruling as to the admissibility or inadmissibility of evidence in a foreign proceeding.

You certainly have the right to recess these proceedings and repair to the Judge in Toronto who created the Commission, appointed the Commissioner and obtain a ruling from him because ultimately the ad-

missibility or inadmissibility of this evidence is up to him; and if the Commissioner here who is sitting in this country by courtesy, but whose authority does not come from me. The authority comes from these letters that were issued from the Supreme Court of Ontario.

My role in this matter was to issue the process that brought Mr. Amerman in this building before you and to insure his continued presence so long as it is necessary, and if he declined to come to find him in contempt and that's all procedural. This is a substantive matter. I don't see anything in 28 U.S.C. § 1782 or the procedure for appeals from the magistrate to me, and it is not for me to make a substantive ruling as to the admissibility or inadmissibility of this sort of testimony in a criminal prosecution in another country.

Now you may have had Federal Judges elsewhere who have thought otherwise, but I had one matter some time ago in which Her Majesty the Queen was a defendant in a case, and I found it presumptuous of me to adjudicate a point of Canadian law in that proceeding.

It would be presumptuous of me in this proceeding to issue a ruling on a point of criminal law in this particular criminal prosecution.

I will be happy to give you any orders you need to insure Mr. Amerman's presence at such time as you continue the examination, and allow you time to go back to Canada and communicate with the Judge who created this whole process.

MR. BLOOM: Thank you very much, your Honor.

THE COURT: You are quite welcome. Thank you.

MR. COOPER: Thank you. We are indebted to your Honor.

THE COURT: We are in recess.