**FIRST FEDERAL SAVINGS BANK OF HEGEWISCH, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

No. 93–162 C.

United States Court of Federal Claims.

Jan. 31, 2005.

Theodore A. Shapero, Piper Rudnick LLP, Chicago, Illinois, for plaintiff.

David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Department of Justice, with whom was Stuart E. Schiffer, Deputy Assistant Attorney General, Washington, D.C., for defendant.

## OPINION AND ORDER

WOLSKI, Judge.

Defendant has moved for the disqualification of the undersigned from hearing this case, pursuant to 28 U.S.C. § 455(a) and § 455(b)(2). But neither I nor anyone with whom I was associated in private practice served as a lawyer concerning the matter in controversy in this case, and it is not reasonable to question my impartiality in this matter. Accordingly, the motion for disqualification is **DENIED**.

## DISCUSSION

**A. Disqualification is Not Required Under 28 U.S.C. § 455(b)(2), as No Lawyer with Whom this Judge Previously Practiced Law Served as Lawyer in the Matter in Controversy During the Time of Association**

Defendant's primary argument for disqualification is based on 28 U.S.C. § 455(b)(2) ("Section 455(b)(2)"). This provision requires that a judge shall disqualify himself in the circumstance "[w]here in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concern-

ing the matter, or the judge or such lawyer has been a material witness concerning it." 28 U.S.C. § 455(b)(2) (2000). The matter in controversy in this case is whether defendant owes damages to plaintiff First Federal Savings Bank of Hegewisch ("Hegewisch"), due to the passage and application of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), Pub.L. No. 101–73, 103 Stat. 183. No lawsuit other than the above-captioned case concerns this particular matter. I, of course, have never served as a lawyer in this matter, and defendant does not make any claims to the contrary. Instead, it argues that other lawyers at the law firms with which I was associated immediately before joining the bench—Cooper, Carvin & Rosenthal and Cooper & Kirk [1]—had represented Hegewisch in the matter in controversy during the time of my association.

Defendant's argument is simply incorrect. Cooper & Kirk never served as counsel for Hegewisch in this matter, nor has it participated in this particular case on behalf of any client. Defendant bases its argument on the roles of Charles J. Cooper and Steven S. Rosenthal as members of the Plaintiffs' Coordinating Committee ("PCC").[2] The PCC, as its name suggests, was formed for case management purposes, to coordinate procedural aspects of the 120–plus cases in our Court that concern the impact of FIRREA on contracts allegedly made between the United States and individual banks and their owners—the so-called *Winstar*-related cases.[3] *See Cal. Fed. Bank v. United States,* 39 Fed.Cl. 753, 755–57 (1997). The Omnibus Case Management Order issued by then-Chief Judge Smith on September 18, 1996, created the PCC, as well as a similar committee for the defendant. *Plaintiffs in All Winstar–Related Cases at the Court v. United States,* Nos. 90–8 C, *et al.* (Fed.Cl. Sept. 18, 1996)(Omnibus Case Management Or-

---

1. The firm was named Cooper, Carvin & Rosenthal, PLLC, when my association began on October 23, 2000. The partnership was reconstituted as Cooper & Kirk, PLLC, on April 1, 2001. For ease of reference, I will refer to "Cooper & Kirk" regardless of the time period in question.

2. I had been associated with Mr. Rosenthal from October 23, 2000 through March 31, 2001, and

with Mr. Cooper from October 23, 2000 to July 23, 2003.

3. These were named after the lead case of the group that had been before the United States Supreme Court. *See United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

der)("CMO"). This order made PCC members the "primary spokespersons for plaintiffs on matters relating to the administration of *Winstar* cases"—that is, on "procedural matters." *Id.* ¶ 3.a.i.

Although the PCC was given "the authority to bind all plaintiffs [in *Winstar*-related cases] with respect to procedural matters," the plaintiffs in each individual case retained the right to present positions concerning these procedural matters that were at odds with the PCC. *Id.*[4] This paragraph of the CMO conclusively demonstrates that the Court did not intend that the PCC would be serving as *lawyers* for every individual plaintiff—for it would hardly be appropriate for a party's lawyer to assert positions contrary to the party's own interests. Moreover, to consider attorneys who serve on panels such as the PCC to be the lawyers for every plaintiff with a related case would as a practical matter make entities such as the PCC impossible to form—for few, if any, would be the counsel who would willingly assume the conflicts issues inherent in that type of arrangement. Courts would be crippled in their ability to coordinate large numbers of related cases, and thus defendant's approach would set a terrible precedent for court administration.

This administrative function of the PCC hardly constitutes "serv[ing] ... as a lawyer concerning the matter" in controversy in any individual *Winstar*-related case. The PCC is a group of "spokespersons" created by Court order to facilitate the efficient management of these 120–plus cases, so that scheduling could be coordinated and the various cases litigated in some rational order and sequence. The CMO also required a "Master Litigation Plan" that included coordinated discovery,[5] and accordingly the PCC organized the coding of documents so produced by defendant. The PCC apparently charged the various *Winstar*-related plaintiffs assessments for shared expenses such as copying, delivery charges, and the food consumed at meetings of plaintiffs' counsel. *See* Pl.'s Mem. Opp'n Def.'s Mot. to Recuse at 3. These assessments were not used for attorneys' fees, as the members of the PCC were not serving as counsel for the various *Winstar*-related plaintiffs. *See id.; id.* at Ex. 1 ¶ 2 (Shapero Aff.).[6] And the mere fact of shared costs does not make the PCC the counsel for all plaintiffs in *Winstar*-related cases, any more than the cost of the special master, shared by plaintiffs and the defendant, would make defendant's counsel the counsel for all plaintiffs. *See* App. to Def.'s Mot. to Recuse ("Def.'s App.") at 13.[7]

Defendant points out that the PCC has taken substantive positions on issues that are common to many *Winstar*-related cases. It is defendant's contention that *amicus curiae* briefs submitted in various cases on behalf of the PCC were really briefs on behalf of every *Winstar*-related plaintiff. But these briefs make it quite clear that the *amicus curiae* was the PCC itself, not every single plaintiff in a *Winstar*-related case. *See* Def.'s App. at

---

4. "In situations where the Committee is unable to speak on behalf of all plaintiffs, the Committee may speak to the Court on behalf of the plaintiffs who agree with the Committee's position. In these situations, the Court will provide an opportunity for other plaintiffs to present their differing views to the Court." CMO ¶ 3.a.i.

5. "The parties will coordinate discovery requests to the maximum extent possible to reduce the burden and expense imposed upon any party or witness." CMO ¶ 7.b.i.

6. While I have not seen any of the joint agreements executed by the plaintiffs in the *Winstar*-related cases, it is my understanding that the agreement governing confidentiality and joint cooperation contains an express provision stating that it should not be construed as creating an attorney-client relationship between any counsel and any plaintiff in a *Winstar*-related case. Just as the Court acting through the CMO did not intend to create an attorney/client relationship between the PCC and the various plaintiffs, as discussed in the text above, there is no evidence of any intent on the part of the individual plaintiffs to create such a relationship. Defendant's reliance on *City of Kalamazoo v. Michigan Disposal Service Corp.*, 125 F.Supp.2d 219 (W.D.Mich.2000), concerning disqualification of an attorney, is thus misplaced. In *City of Kalamazoo*, the joint defense agreement's disclaimer concerning attorney/client relationships did not cover the relevant attorneys, who served as "common counsel" under the agreement, and those attorneys were paid legal fees from a joint fund. *Id.* at 224, 227–28.

7. Carrie Johnson, *Assault On The Vault*, LEGAL TIMES, April 19, 1999, at 14 (explaining how costs of special master were apportioned).

16, 23, 59, 62–63, 71, 112.[8] These briefs were briefs of the PCC, not of Hegewisch. In addition, filing an *amicus curiae* brief in a separate case does not constitute serving as a lawyer in *this* case. To hold to the contrary would mean that judges would have to recuse themselves from every case involving a question of law governed by a precedent determined in a different case, whenever their former law firm participated in some way in making that precedent. As one would expect, there is no support for such a position.[9]

Defendant focuses on one substantive matter in which the role of the PCC was, arguably, more than just an *amicus*. In 1997, then-Chief Judge Smith held an oral argument concerning summary judgment motions filed in four separate cases.[10] As the resulting opinion recounts, *see Cal. Fed.*, 39 Fed. Cl. at 756–58, these cases were selected to be argued at the same setting because they together presented the Court with the potential of resolving eleven issues that were raised in several *Winstar*-related cases. The PCC, which had identified these common issues raised as contract defenses by the defendant, was allowed to submit supplemental briefing and participate in the oral argument.[11] The reply brief submitted by the

PCC was signed by Messrs. Cooper and Rosenthal, *see* Def.'s App. at 124, and Mr. Cooper participated in the August 7, 1997 oral argument on behalf of the PCC. *See id.* at 11.[12] While that proceeding resolved the issues as presented in the four cases being argued, the Court ordered that the resulting precedents would be applicable in each *Winstar*-related case unless the defendant could show cause to the contrary. *See Cal. Fed.*, 39 Fed.Cl. at 779.

Because the PCC was not expressly identified as an *amicus curiae* in that special proceeding, and had presented briefing and argument in a proceeding that the Court used to settle, as a matter of law, the crosscutting issues, one could argue that the PCC represented all *Winstar*-related plaintiffs in that proceeding. The relation of the 1997 proceedings to this case would still, however, be no different from that of any precedent set in another case. A lawyer's direct participation in creating a precedent does not transform that attorney into the lawyer in every case in which that precedent might be applied. And even if the PCC's participation in the 1997 proceedings could be deemed to have been directly on behalf of

**8.** The defendant misrepresents one of these briefs, claiming that it shows "the PCC views the various *Winstar* plaintiffs as its 'clients.'" Def.'s Mot. to Recuse at 6. The referenced brief (cited in footnote 5 on the page cited) in actuality states that "[n]o monetary contribution for the preparation or submission of this brief was made by any entity other than the Winstar PCC and its clients, who are all plaintiffs in the *Winstar*-related cases, and none of whom are parties to this case." Def.'s App. at 112 n. 1. Defendant apparently misread this note, which plainly states that *the individual clients of the PCC members* paid for it; defendant must have mistakenly read the explanation that these clients "are all plaintiffs in the *Winstar*-related cases" to instead say, "who are *all the plaintiffs* in the *Winstar*-related cases."

**9.** At least one Supreme Court opinion implicitly rejects the position urged by defendant. Although the issue was presented under 28 U.S.C. § 455(a), and not Section 455(b)(2), in *Sao Paulo State of the Federative Republic of Brazil v. American Tobacco Co.*, 535 U.S. 229, 122 S.Ct. 1290, 152 L.Ed.2d 346 (2002) (per curiam), the Court reversed the Fifth Circuit's decision to disqualify a judge from hearing a case even though the trial lawyers' association of which he was then a leader had submitted an *amicus curiae* brief "in

a similar suit against some of the same defendants." *See id.* at 230, 233, 122 S.Ct. 1290. The judge in question "took no part in the preparation or approval of the *amicus* brief," *id.* at 233, 122 S.Ct. 1290, despite his leadership position with the *amicus curiae*. Similarly, I did no work whatsoever for the PCC. *Sterling Savings v. United States*, No. 95–829 C (Fed.Cl. Dec. 2, 2003)(Order).

**10.** These cases were *California Federal Bank v. United States*, No. 92–138 C; *Landmark Land Co. v. United States*, No. 95–502 C; *LaSalle Talman Bank v. United States*, No. 92–652 C; and *Suess v. United States*, No. 90–981 C. *See Cal. Fed.*, 39 Fed.Cl. 753.

**11.** *See* Order, *Plaintiffs in All Winstar–Related Cases at the Court v. United States*, No. 90–8 C, *et al.* (Fed.Cl. May 28, 1997) at 1 ("recognizing that many of the issues presented in this case present common or crosscutting *Winstar* issues that are relevant to other cases, additional briefing will be permitted. Plaintiffs' Coordinating Committee may file supplemental briefs[.]").

**12.** Mr. Rosenthal represented one of the plaintiffs, California Federal Bank, in the oral argument. *See* Def.'s App. at 11.

every single plaintiff in every single *Winstar*-related case, this would still not be a basis for my disqualification, for the simple fact that this occurred *over three years before my association* with Messrs. Cooper and Rosenthal.[13] By the very terms of Section 455(b)(2), disqualification is not required based on one's prior association with a law firm unless the law firm's involvement in a matter was "during such association."

Of course, there are circumstances in which the PCC could have been involved in the matter in controversy in the above-captioned case without representing Hegewisch directly. The example that comes immediately to mind would be an *amicus curiae* brief filed by the PCC in this very case. For that reason, one of the first things the undersigned did when *Winstar*-related cases were assigned was to check the docket entries to verify that the PCC had not participated in the matters (the PCC, of course, had not).

With no papers filed in this case by Cooper & Kirk on behalf of the PCC or any other *amicus curiae*, no one at my former firm has served as lawyer concerning this matter. None of my former firm's clients would directly benefit from the outcome of this case. *See Preston v. United States,* 923 F.2d 731, 734–35 (9th Cir.1991) (disqualification required when judge's former firm represented employer which would have been subject to indemnification suit if wrongful death action before the judge were successful). Nor is the work of my former firm a matter of factual relevance to the outcome of this case. *See In re Rodgers,* 537 F.2d 1196, 1197–98 (4th Cir.1976) (former partner's lobbying efforts were defense evidence, and thus were part of the matter in controversy); *In re*

*Letters Rogatory,* 661 F.Supp. 1168, 1173–74 (E.D.Mich.1987) (judge disqualified himself where the issue might arise of his former firm's assertion of an attorney-client privilege over documents sought in discovery).[14] And there is no issue concerning confidential information I may have received from any of the plaintiffs in *Winstar*-related cases, *see United States v. Henke,* 222 F.3d 633, 637 (9th Cir.2000), for I have no extra-judicial knowledge of any disputed evidentiary facts concerning any of the *Winstar*-related cases assigned to me. *Cf.* Order, *Sterling Savings v. United States,* No. 95–829 C (Fed.Cl. Dec. 2, 2003); Def.'s Mot. to Recuse at 3 (quoting from Order). In sum, no "lawyer with whom [I] previously practiced law served during such association as a lawyer concerning the matter" in controversy in this case, and Section 455(b)(2) thus does not require my disqualification.

**B. Disqualification is Not Required Under 28 U.S.C. § 455(a), as there is No Reasonable Basis to Question this Judge's Impartiality Concerning this Matter**

■ Defendant's secondary position is that disqualification is required under 28 U.S.C. § 455(a) (2000) ("Section 455(a)"), which reads "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." But as the Federal Circuit has held,

> Absent a factual showing of a reasonable basis for questioning his or her impartiality, or allegations of facts establishing other disqualifying circumstances, a judge should participate in cases assigned. Conclusory statements are of no effect. Nor are coun-

---

**13.** Mr. Rosenthal's argument on another cross-scutting issue, concerning the statute of limitations, was even further removed in time from my association with him. *See Plaintiffs in Winstar-Related Cases v. United States,* 37 Fed.Cl. 174, 177 (1997).

**14.** In what can charitably be described as a rather long stretch, defendant tries to analogize the review of evidentiary documents in *Letters Rogatory* to the possibility that I might be "placed in the position of reviewing legal arguments, on issues such as taking claims and damages claims, that have been influenced by Mr. Cooper and Mr. Rosenthal in briefing on behalf of all *Winstar* plaintiffs." Def.'s Mot. to Recuse

at 18; *see id.* at 19–20. But the two situations are not even remotely similar. And even if Hegewisch's counsel were to employ legal arguments first developed in another case by another counsel, or were to discuss legal theories with counsel for other parties, this would not magically transform the counsel for the other parties into lawyers in this case. If it did, then every judge would have to ask every attorney appearing before him in every case whether these attorneys ever discussed legal theories with lawyers from the judge's former firms—a rather burdensome practice which, to my knowledge, is not the norm.

sel's unsupported beliefs and assumptions.... Nor does mere prior association form a reasonable basis for questioning a judge's impartiality.

*Maier v. Orr,* 758 F.2d 1578, 1583 (Fed.Cir. 1985) (citations omitted).

It should be noted that there are no allegations that I have any personal interest in the outcome of this case, or that I am *actually* partial to or biased against one side or the other. Defendant does argue that a transitive property should apply, so that the "obvious partiality" of Mr. Cooper "can be attributed to the Court." Def.'s Mot. to Recuse at 26. The "partiality" of Mr. Cooper is based on his "very public statements" and "the clearly partial positions taken by the firm of Cooper & Kirk," *id.*—in other words, on Cooper & Kirk's having "consistently and zealously opposed the positions taken by the Government in the *Winstar* cases." *Id.* at 25. Of course, the very nature of our adversarial legal system requires that attorneys be partial to the interests of their clients, and even "zealously" represent them.

The suggestion that Cooper & Kirk's work to further the interests of its clients raises the appearance of partiality on my part escapes being frivolous due only to defendant's citation to one case, *Hampton v. Hanrahan,* 499 F.Supp. 640 (N.D.Ill.1980). That case makes a poor analogy, however, as the judge's former law firm was a member of a committee that had previously filed an *amicus curiae* brief in the very case that was assigned to the judge. *Id.* at 644–45. His former partner, representing the law firm, served as a co-chairman of the committee and as a member of its board of directors at the time the brief was filed, and "participated in the approval of the filing of the brief." *Id.*[15] Thus, his imputed partiality was based on his law firm's interest in the outcome, his firm having participated, through membership in a committee, as an *amicus curiae* in the case. As is explained above, Cooper & Kirk has not filed any briefs, *amicus* or otherwise, as lawyer or party, in this particular case.

Rather than basing its allegations of the appearance of partiality on known facts, defendant complains that in the case *Sterling Savings v. United States,* No. 95–829 C, I did not agree to respond to what was, in effect, a set of interrogatories of a rather intrusive nature concerning my work at Cooper & Kirk. *See* Def.'s Mot. to Recuse at 2–3, 22, 24–25. I had, instead, provided all relevant information in an Order denying defendant's request—including the facts that I had no extra-judicial knowledge of the facts concerning that case, that I did no work for the PCC, that my previous employer and its clients had no financial interest in that case, that I had no fiduciary interest in any *Winstar*-related case and had no financial interest in Cooper & Kirk. Order, *Sterling Savings v. United States,* No. 95–829 C (Fed.Cl. Dec. 2, 2003). I will add here that these same facts hold true for this case and the other *Winstar*-related matter assigned to me.

The defendant's argument is, in essence, that unless a judge provides it with facts that it deems sufficient to disprove a speculative appearance of partiality, this appearance is presumed. This argument runs in the face of the Federal Circuit's admonition that "[a]bsent a factual showing of a reasonable basis for questioning his or her impartiality ... a judge should participate in cases assigned." *Maier,* 758 F.2d at 1583. Defendant asserts it has "no way of knowing whether the Court had access to non-public documents relating to the *Winstar*-related cases while at Cooper & Kirk, or had discussions with Cooper & Kirk attorneys about these cases that would create the appearance of partiality." Def.'s Mot. to Recuse at 24–25. But the Federal Circuit has held that "unsupported beliefs and assumptions" and "[c]onclusory statements are of no effect." *Maier,* 758 F.2d at 1583.

Moreover, there is no legal basis supporting the relevance of any of the other information that was sought by defendant. Discussions about and documents from other *Winstar*-related cases have no bearing on the matters before me.[16] Defendant wants

---

15. The judge determined that section 455(b)(2) did not apply because his former partner, on behalf of the firm, was acting "as the *client,* not the *lawyer.*" *Hampton,* 499 F.Supp. at 645.

16. It bears noting that the United States Court of Claims, in a precedent that is binding on this

to know such things as whether I "acquired knowledge, or applied law to facts during [my] work at Cooper & Kirk regarding the myriad legal and factual issues directly implicated in" the three *Winstar*-related cases assigned to me. Def.'s Mot. to Recuse at 24. But I had already explained my lack of extra-judicial knowledge concerning the facts in *Sterling Savings,* and if asked I would have made it clear that I obtained no extra-judicial knowledge of the facts concerning this case or the case *Astoria Federal Savings & Loan Assoc. v. United States,* No. 95–468 C, 63 Fed.Cl. 579, 2005 WL 256355 (Fed.Cl. Jan. 31, 2005), as well. The facts of other cases are utterly irrelevant to these matters. Defendant makes the unsupported (and unsupportable) argument that if I "performed legal research on issues pertaining to any of th[e] damages theories" asserted in a case assigned to me, then "recusal would be required." Def.'s Mot. to Recuse at 24 n. 9.

The sweep of this argument is rather breathtaking, considering that Section 455(a) applies to judges who had formerly served in the public sector as well as those coming from private practice. If it were adopted, this would mean that former U.S. Attorneys who are appointed to the bench could not sit in any case involving a legal issue—concerning, say, violations of a particular criminal law—that they had previously researched or applied to facts. Or former public defenders would be disqualified if a legal defense is raised that they had themselves previously employed. Indeed, if the defendant truly believed that prior research concerning a legal theory would disqualify a judge from hearing a case containing that theory, then

attorneys with the Commercial Litigation Branch could never in good conscience aspire to a place on our court or the Federal Circuit, considering the small percentage of cases on these dockets in which they could participate under this supposed rule. But defendant's argument has never been the law and this Court sees no reason to make it so.[17]

Defendant's claim that my limited work at Cooper & Kirk in *Winstar*-related cases raises questions about my impartiality is without merit, as no reasonable person would assume partiality on that basis.[18] As defendant well knows, I was never counsel of record or otherwise appeared in any *Winstar*-related case, and did no work for the PCC. *See* Tr. (Nov. 10, 2003) at 4, *Sterling Savings v. United States,* No. 95–829 C; Order, *Sterling Savings v. United States,* No. 95–829 C (Fed. Cl. Dec. 2, 2003). Defendant has not identified one fact that even remotely raises an appearance of partiality on my part, and Section 455(a) thus does not require my disqualification.

## CONCLUSION

For the reasons stated above, defendant's motion that I be disqualified from hearing this case under 28 U.S.C. §§ 455(a) and 455(b)(2) is hereby DENIED.

**IT IS SO ORDERED.**

---

Court, adopted Section 455(b) "as a reasonable particularization of the generalized standard of disqualification set forth in 28 U.S.C. § 455(a)." *Int'l Inst. for Fundamental Studies, Inc. v. United States,* 222 Ct.Cl. 626, 629, 1980 WL 13138 (1980). Thus, legal work by my former employer in matters other than those in controversy in this particular case, or performed at times other than during my association, would not constitute grounds for disqualification under Section 455(a), for this would not require disqualification under Section 455(b)(2).

17. Defendant's proposed approach has been rejected by some of our Nation's leading jurists.

*See Laird v. Tatum,* 409 U.S. 824, 829–36, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972) (Rehnquist, J.)(mem.opinion); *Schurz Communications, Inc. v. FCC,* 982 F.2d 1057, 1061–62 (7th Cir.1992) (Posner, J.)(in chambers).

18. Far from presenting "much less stark circumstances," Def.'s Mot. to Recuse at 25, the *Patterson* case defendant relies on involved a situation in which the disqualified judge's firm represented one of the *Patterson* defendants when it was sued on behalf of one of the *Patterson* plaintiffs concerning worker injuries that were part of the matter in controversy in *Patterson. See Patterson v. Mobil Oil Corp.,* 335 F.3d 476, 481–82 (5th Cir.2003).